UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYN MOONFLOWER,<br><br>               Plaintiff,<br><br>  v.<br><br>COLUMBIA RECOVERY GROUP, LLC, et al.,<br><br>               Defendants. | CASE NO. C17-5326 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Columbia Debt Recovery, LLC's ("Columbia")[1] motion for summary judgment. Dkt. 36. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On May 2, 2017, Plaintiff Rayn Moonflower ("Moonflower") filed a complaint against numerous defendants for "violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ["FDCPA"] and the Fair Credit Reporting Act (15 USC § 1681, *et*

---

[1] It is undisputed that Columbia purchased Columbia Recovery Group, LLC in March 2017. The Court will refer to both entities as Columbia.

*seq.*) [FCRA]." Dkt. 1. On October 16, 2017, Moonflower filed an amended complaint adding Columbia as a defendant and asserting the same claims. Dkt. 20.

On November 27, 2018, Columbia filed a motion for summary judgment. Dkt. 36. On December 17, 2018, Moonflower responded and conceded her FCRA claim against Columbia. Dkt. 39. On December 12, 2018, Columbia replied. Dkt. 44.

## II. FACTUAL BACKGROUND

On October 16, 2013, Moonflower and her son signed a lease to rent an apartment owned by Rainier Pointe. Dkt. 38-1 at 31–41. The lease provided the cleaning procedures upon moving out of the apartment as follows:

> Resident must thoroughly clean the [apartment], including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. Residents must follow move-out instructions if they have been provided. If Residents don't clean adequately, Residents will be liable for reasonable cleaning charges, including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is wear or soiling that occurs without negligence, carelessness, accident, or abuse). Owner may deduct the cost of carpet cleaning regardless of whether the Residents clean the carpet before delivery of possession.

*Id*. at 39, ¶ 27. On October 21, 2013, Moonflower and her son signed a pet addendum, which provided that "[t]here may be an additional charge assessed upon your move-out to fumigate and/or deodorize the Apartment." *Id.* at 42, ¶ 10.

On November 1, 2014, Moonflower and her son vacated the premises. The move-out report noted that the floors and carpet needed replacing and that the living room floor smelled like pets. 38-2 at 2–4. Rainier Pointe issued Moonflower a final billing statement charging her $231.08 for pro-rated rent and utilities, $295.00 for carpet

replacement and pad, and $105.00 for a full clean. Dkt. 38-2 at 6. After subtracting Moonflower's security deposit, Rainier Pointe asserted that Moonflower owed $532.08. *Id.* When Moonflower refused to pay, Rainier Pointe forwarded the documents to Columbia.

On December 9, 2014, Columbia sent Moonflower a letter stating the balance owed and requesting payment. On December 31, 2014, Moonflower responded and disputed not only the alleged debt owed but also the factual basis for the debt owed. Dkt. 38-2 at 14–15. Moonflower asserted that she did not damage the apartment in any way and that the carpet was not new when she moved in. *Id.*

On January 21, 2015, Columbia emailed Rainier Pointe requesting any additional information regarding Moonflower. Dkt. 38, ¶ 10. On January 28, 2015, Rainier Pointe responded with a screenshot of an email stating that the carpet and pad needed replacing due to damages including pet urine. *Id.*

On January 29, 2015, Columbia forwarded the results of its investigation to Moonflower. Columbia stated that, based upon its investigation, Moonflower's dispute was invalid. *Id.*, ¶ 11.

On February 13, 2015, Columbia received a dispute verification request from TransUnion. *Id.*, ¶ 12. Columbia responded to each company that the balance was accurate as reported and that the account was disputed. *Id.*

On March 12, 2015, Columbia received another letter from Moonflower disputing the amount owed. Dkt. 38-3 at 5–6. Columbia responded that, without any new information, it would not open a new investigation. *Id.* at 8.

On December 17, 2018, Columbia received a dispute verification request from Experian. Dkt. 38, ¶ 15. Columbia reported that the balance was accurate and that the account was disputed. *Id.*

On February 19, 2016, Moonflower sent another letter to Columbia regarding the dispute. Dkt. 38-2 at 10–11. Columbia responded that, without any new information, it would not open a new investigation. *Id.* at 13.

In late March 2017, Columbia received dispute verification requests from Equifax, Experian, and TransUnion. Dkt. 38, ¶ 17. Columbia reported that the balance was accurate and that the account was disputed. *Id.*

Moonflower filed this complaint shortly thereafter.

### III. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     FDCPA**

It is a violation of the FDCPA if a debt collector communicates "to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). "The statutory term 'should have known' imparts a test of reasonableness." *Holmes v. NCO Fin. Servs., Inc.*, 538 Fed. App'x. 765, 766 (9th Cir. 2013) (quoting *Shultz v. Dep't of*

*Army*, 886 F.2d 1157, 1160 (9th Cir. 1989)). A debt collector, however, "is not liable for its violations of the FDCPA if 'the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176–77 (9th Cir. 2006) (quoting 15 U.S.C. § 1692k(c)). Reading sections 1692e(8) and 1692k(c) together, the Ninth Circuit concluded as follows:

> Logically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report.

*Clark*, 460 F.3d at 1177.

In this case, Moonflower attempts to extend the law to place the burden on a debt collector to resolve contractual disputes among the creditor and the debtor. For example, Moonflower argues as follows:

> Perhaps Defendant should not be charged with undergoing thorough legal analysis like that which exists in this briefing before deciding whether a dispute is justified, but surely a proper procedure for ensuring accurate statement of debts must include some kind of understanding of the kinds of things that landlords are allowed to charge to renters. Defendant has provided no evidence that its policies or procedures include any training to its collectors with regard to basic landlord tenant law or with respect to what landlords are allowed to charge tenants on move-out. Without that, there is no possible way that a debt collector could make any justifiable determination that it had "reasonably relied" on its creditor's statements. Again, this would not require that a Defendant who collects landlord/tenant debts employ an attorney to analyze every dispute. However, it probably does require that at the time of the establishment of a policy an attorney be consulted to compile a brief list of guidelines for collection employees to consult when considering whether a dispute by an alleged debtor is valid or not. Blind reliance is never "reasonable reliance," and without a procedure

  that resembles the above there can be nothing other than "blind reliance" on
the part of a debt collector.

Dkt. 39 at 8–9. Moonflower fails to cite, and the Court is unaware of any, authority for Moonflower's sweeping proposition that debt collectors be either versed in or provided guidance in the area of law governing the debt upon which they are attempting to collect. Moonflower also fails to provide any compelling reason to extend the law as requested. If Moonflower seeks a legal determination whether she owes the debt to Rainier Pointe, she should file suit in the appropriate court. There is neither precedent nor persuasive reason to place the burden of resolving a contract dispute on debt collectors.

  On a similar note, Moonflower argues that Columbia must evaluate whether Rainier Pointe provided Moonflower with a "full and specific" statement of the reasons for the charges in compliance with RCW 59.18.280. Dkt. 39 at 3. Contrary to Moonflower's position, the statute only requires a "full and specific" statement as to the reasons for withholding Moonflower's security deposit. RCW 59.18.280(1) ("the landlord shall give a full and specific statement of the basis for retaining any of the deposit"). Even if Columbia was required to evaluate whether Rainier Pointe provided a full and specific statement as to the deposit, the itemized charges for pro-rated rent and utilities amounted to $231.08, which vastly exceeded Moonflower's security deposit of $99.00. Thus, Moonflower's novel argument is factually without merit even if the Court found it to be legally meritorious.

  Having rejected Moonflower's novel propositions of law, the Court concludes that the question presented is whether Columbia acted reasonably in reporting the alleged

debt.  Upon review of the evidence, the Court concludes that no reasonable juror would conclude that Columbia acted unreasonably. Columbia was in possession of the lease, which stated that charges would apply if the tenant did not clean properly and carpet cleaning would be charged whether or not the tenant cleaned it.  The pet addendum stated that additional charges may apply to deodorize the unit upon moving out.  Rainier Pointe's employee conducted a move-out inspection and determined that the premises were dirty and that the carpet needed to be replaced in part because it smelled like pet urine.  To counter this evidence, Moonflower provided her and her son's self-serving letters asserting that they did not damage the apartment in any way and that the carpet was not new when they moved in, as well as videos showing the condition of the apartment when they moved out.[2]  At most, this establishes a question of fact with each side supported by competent evidence.  In such a situation, it was reasonable for Columbia to stand by its client's position that the debt was owed while also stating that the account was disputed.  Therefore, the Court grants Columbia's motion for summary judgment on Moonflower's FDCPA claim.

---

[2] Even if Columbia watched the videos, they do not contradict Rainier Pointe's assertion that the carpet smelled like pet urine.

# IV. ORDER

Therefore, it is hereby **ORDERED** that motion for summary judgment, Dkt. 36, is **GRANTED**. The Clerk shall terminate Columbia Debt Recovery, LLC and Columbia Recovery Group, LLC. Upon entry of Defendant Equifax's settlement and dismissal papers, the Clerk shall enter a **JUDGMENT**, and close the case.

Dated this 6th day of February, 2019.

BENJAMIN H. SETTLE
United States District Judge